IN THE IOWA DISTRICT COURT FOR CRAWFORD COUNTY

| BRADLEY WENDT, | Case No. LACV039338 |
|---|---|
| Plaintiff, | |
| vs. | |
| CITY OF DENISON, IOWA and JOHN EMSWILER, | **PETITION** and **JURY DEMAND** |
| Defendants. | |

COMES NOW the Plaintiff, Bradley Wendt, and for his cause of action hereby states as follows:

## INTRODUCTION

1. This is an action under the whistleblower protections guaranteed by the State of Iowa, and the First Amendment of the United States Constitution, challenging Defendants' unlawful conduct against Plaintiff.

2. Plaintiff Bradley Wendt is a resident of Crawford County.

3. Defendant John Emswiler is believed to be a resident of Kossuth County.

4. Defendant City of Denison is a municipal corporation located in Crawford County.

5. The acts of which Plaintiff complains occurred in Crawford County.

## BACKGROUND FACTS

6. Defendant City of Denison hired Plaintiff Bradley Wendt as a Police Officer on December 28, 2009.

7. Rod Bradley served as the City's Chief of Police until his retirement in April 2015.

8. The City solicited applications and conducted interviews with potential replacements for Chief Rod Bradley in February and March 2015.

9. Assistant Chief John Emswiler applied for the position and was selected to replace Bradley.

10. Chief Emswiler served as the City's Police Chief from April 2015 until his resignation on June 23, 2016.

11. In September 2015, Chief Emswiler had an arrest warrant for a citizen of Denison.

12. Upon arriving at the citizen's apartment, no one answered the door.

13. The Chief wanted to enter the apartment, but did not have a search warrant nor any reason to believe the citizen was in the apartment.

14. In fact, the citizen was not located in his apartment.

15. Using his knife, Chief Emswiler pried a window open, reached in, and unlocked the door, while telling Officer Ohl "It's not breaking and entering if you don't break anything."

16. Officer Ohl immediately knew there was no legal basis to enter the apartment, and notified Brad, along with Officers Nathan Christianson, Mitchell Flaherty, and Jim Mink about the illegal search.

17. Brad reported the illegal search to the Ombudsman's office in October.

18. Chief Emswiler also knew Brad had reported him to the Ombudsman's Office and began retaliating against him.

19. In November 2015, law enforcement officers at the Crawford County Law Enforcement Center discovered a computer directory that was shared with all users at the Law Enforcement Center.

20. The directory contained more than 20 gigabytes of documents, photographs, edited photographs, pornographic images, and visual presentations of merged text and photographs.

21. The directory contained a photograph of another law enforcement officer's 16-year-old daughter, and two of her friends, wearing bikinis.

22. The photographs, edited photographs, and visual presentations included racist, sexist, and otherwise demeaning content.

23. Chief Emswiler exclusively created, updated, maintained, and controlled the content in the directory.

24. In December 2015, a law enforcement officer showed Brad an image created by Chief Emswiler.

25. The image included a photograph of Brad's face on Tiger Woods' body, the image of a bottle of Viagara modified to read, "Tiagara," and the text, "BECAUSE SOMETIMES 18 HOLES AREN'T ENOUGH."

26. The photograph of Brad's face was identical to the photograph that appears on the driver's license that the Iowa Department of Transportation issued to Brad on October 30, 2012.

27. Chief Emswiler obtained Brad's driver's license photograph from the Iowa Department of Transportation's motor vehicle records.

28. In late-2015, Chief Emswiler knowingly disclosed the photograph of Brad by making the contents available and accessible on the Crawford County Law Enforcement Center file server.

29. Chief Emswiler shared the contents of the directory with others for the purpose of harassing, humiliating, and embarrassing the subjects of the documents.

30. The City and former Police Chief Rod Bradley had informally reprimanded Emswiler for similar content at least two times prior to the discovery of the directory in November 2015.

31. Emswiler blamed Brad and another officer, Ray Ohl, for the directory being shared, although neither had anything to do with its being shared.

32. In December, Brad was charged with hunting violations, including simple misdemeanors and one aggravated misdemeanor.

33. Brad was placed on paid leave in December pending the outcome of the charges.

34. Brad was then told that because one of the charges was an aggravated misdemeanor, he would be placed on unpaid administrative leave. The unpaid leave was as result of the aggravated misdemeanor only; the simple misdemeanors would not justify the unpaid status.

35. After the directory had been discovered, Brad took approximately 50 pictures to the city council, and demanded action against Emswiler.

36. When he did so, Mayor Brad Bonner told Brad his complaint was "worthless."

37. After his complaint, Defendants continued retaliating against Brad. Members of the city council told others in the community that, regardless of the outcome of the hunting charges, they would never let Brad come back to work.

38. Brad also exercised his First Amendment rights by talking to the media about the directory.

39. After Brad spoke to the media, and after Brad had reported Emswiler to the Ombudsman's office, Emswiler asked Brad to resign his position.

40. Emswiler did not tell Brad why he wanted Brad to resign.

41. Brad refused to resign his position, as he had done nothing wrong.

42. In approximately April 2016 Brad was told that the building from which he runs a secondary business required a house number. The building had not had a house number for decades.

43. Many buildings do not have house numbers on them.

44. Brad was targeted by Defendants in retaliation for his protected conduct.

45. Brad was also retaliated against for placing street signs for his business. Other business owners utilize street signs but are not told to remove them.

46. On May 3, 2016, Brad filed a petition alleging privacy violations based upon the Chief's illegal use of Brad's driver's license photo.

47. On June 23, 2016, John Emswiler resigned as Chief of Police.

48. In late August or early September 2016, one of the individuals charged with Brad had all his charges dismissed.

49. The facts and circumstances surrounding this man's charges and Brads were the same, meaning Brad's charges are expected to be dismissed as well.

50. The only reason for Brad's suspension was the hunting charges.

51. Even after it became clear that Brad's charges would be dropped, Defendants continue to refuse to let Brad return to his job.

52. On September 12, Brad's aggravated misdemeanor charge was downgraded to a simple misdemeanor.

53. Again, Defendants continue to refuse to allow Brad to return to work.

54. Other officers have been allowed to continue working with pending simple misdemeanors.

55. Brad asked to be placed back on paid administrative leave, now that there was no aggravated misdemeanor, but Defendants refused.

56. Brad was again told that members of the city council were telling citizens of Denison that, even if the hunting charges against Brad are dismissed, they would never allow him to resume his job as a police officer.

57. Defendants continue to retaliate against Brad by not letting him go to his own, personal police locker, even though he is still an employee of the City.

58. On October 10, 2016, Brad attempted to pick up items from his locker at the police department.

59. Brad was not allowed to go back to his locker; the clerk told him they were "too busy."

60. Brad's next hearing regarding his charges is November 29, 2016, where he expects the charges to be dropped.

61. Once Brad's charges are dropped, there is absolutely no legitimate reason preventing Brad from returning to work.

62. Because of Defendants' unwillingness to allow Brad to return to work, he applied for secondary employment at the Adair Police Department.

63. The City of Adair offered Brad a job working for their Department.

64. Before he could accept, Denison Police Department policy mandates that he be approved by the Department for secondary employment.

65. Many other officers moonlight for other departments, and Brad had previously been approved for secondary employment.

66. On approximately October 18, Defendants denied Brad's application for secondary employment without telling him why.

67. Defendants' actions directly prevented Brad from obtaining employment and the benefits he could have obtained therefrom.

68. John Emswiler was an employee and/or agent of Defendant City of Denison, acting at all material times within the scope of his employment and agency.

69. Dan Leinen was an employee and/or agent of Defendant City of Denison, acting at all material times within the scope of his employment and agency.

## COUNT I
## RETALIATION FOR WHISTLEBLOWING
## VIOLATION OF IOWA CODE § 70A.29

70. Plaintiff realleges paragraphs 1 through 69 as if fully set forth herein.

71. Brad reported what he believed to be an illegal search to public officials and to the Denison Police Department.

72. Defendants retaliated against Brad for reporting a search he reasonably believed broke the law.

73. Such information evidenced a violation of law or rule, mismanagement, and an abuse of authority.

74. As result of Defendants' acts and omissions, Brad has in the past and will in the future suffer damages.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages, for appropriate equitable and injunctive relief, including but not limited to reinstatement, for attorney's fees, litigation expenses, interest, the costs of this action, and for such other relief as may be just in the circumstances.

## COUNT II
## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT
## VIOLATION OF 42 U.S.C. § 1983

75. Plaintiff realleges paragraphs 1 through 74 as if fully set forth herein.

76. Brad engaged in communications to the media regarding then-Chief Emswiler and an illegal search, as well as the information disclosed from then-Chief Emswiler's computer directory.

77. Brad's communications constituted free speech on matters of concern to the public which were protected by the First Amendment to the Constitution of the United States of America.

78. Defendants retaliated against Brad because of his exercise of First Amendment rights.

79. Defendants acted under color of law.

80. Defendants' actions in retaliation for free speech deprived Brad of rights, privileges and immunities secured by the Constitution and violates 42 U.S.C. Section 1983.

81. The constitutional right to free speech was clearly established at the time of Defendants' actions.

82. Defendant John Emswiler either knew, or in the exercise of his duties should have known, about Brad's constitutional rights.

83. As result of Defendants' acts and omissions, Brad has in the past and will in the future suffer injuries and damages including but not limited to lost wages and benefits, emotional distress, lost enjoyment of life, and medical expenses.

WHEREFORE, Plaintiff requests judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages, for appropriate equitable and injunctive relief, including but not limited to reinstatement, for attorney's fees, litigation expenses, interest, the costs of this action, and such other relief as would be just under the circumstances.

## JURY DEMAND

COMES NOW the Plaintiff and hereby requests a trial by jury.

_/s/ Brooke Timmer_
FIEDLER & TIMMER, P.L.L.C.
Brooke Timmer AT0008821
brooke@employmentlawiowa.com
David Albrecht AT0012635
david@employmentlawiowa.com
8831 Windsor Parkway
Johnston, IA 50131
Telephone: (515) 254-1999
Fax: (515) 254-9923
ATTORNEYS FOR PLAINTIFF