# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BRADLEY WENDT,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF DENISON, IOWA,<br><br>　　　　　Defendants. | No. C16-4130-LTS<br><br>**ORDER ON MOTION FOR<br>PRELIMINARY INJUNCTION** |

## I.　　INTRODUCTION

This case is before me on plaintiff Bradley Wendt's motion (Doc. No. 19) for preliminary injunction. Defendant, the City of Denison, Iowa (the City), filed a resistance (Doc. No. 27). Wendt filed a reply (Doc. No. 30) and the City filed a reply to Wendt's reply (Doc. No. 32). On May 3 and 4, 2017, I held an evidentiary hearing. The motion is now fully submitted and ready for decision.

## II.　　PROCEDURAL HISTORY

Wendt commenced this action on November 7, 2016, by filing a two-count petition in the Iowa District Court for Crawford County. Doc. No. 4. Wendt alleges (1) retaliation in violation of Iowa Code § 70A.29 (the Whistleblower Act) and (2) retaliation in violation of the First Amendment to the United States Constitution.[1] On November 23, 2016, the City removed the action to this court on the basis of federal question jurisdiction. Doc. No. 3. Wendt filed his motion for preliminary injunction on February 15, 2017.

---

[1] The petition names a second defendant, John Emswiler. Wendt has dismissed Emswiler from this action without prejudice. Doc. No. 23.

### III. FACTUAL BACKGROUND

Wendt, a former police officer for the City, contends that he was retaliated against for actions protected by the Whistleblower Act and for exercising his First Amendment rights.

**The Cast**. Wendt was a police officer for the City from December 29, 2008, until his discharge on February 14, 2017. Emswiler was the City's Deputy Chief of Police prior to becoming Chief of Police in April 2015. He served as Chief until June 23, 2016, when he resigned. Dan Schaffer became Chief of Police in September 2016.

Brad Bonner was the City's Mayor from January 2014 until December 2015 and continued to serve on the City Council after his term as Mayor ended. Dan Leinen succeeded Bonner as Mayor effective January 1, 2016.

Ray Ohl worked as a police officer for the City but was discharged before Wendt. Tony Trejo and Douglas Peters are both Sergeants with the City's police department.

**The Claims**. Count 1 alleges retaliation for (1) Wendt's report to the Iowa Ombudsman's Office about Emswiler allegedly illegally entering a home (the Entry) and (2) Wendt's disclosures to the City Council and Mayor about a directory of inappropriate images (the Directory) that Emswiler maintained on a police department computer. Count 2 alleges retaliation for Wendt's exercise of his First Amendment rights.

**The Evidentiary Hearing.** During the evidentiary hearing, Wendt, Leinen, Schaffer, Bradley, Emswiler, Bonner, Trejo and Peters testified. Wendt submitted Exhibits 1 through 65, including a recording of a Denison Police Department meeting that was played during the hearing. The City submitted Exhibits A through TT. I will discuss relevant testimony and exhibits as it pertains to the analysis below.

**The Entry**. In September 2015, Emswiler and Ohl were executing an arrest warrant at a residence in Denison. After no one answered the door, Emswiler used a knife to pry open a window and unlock the door in order to enter the apartment. Ohl

2

informed Wendt about the incident and sent him a video of the event. The video was sent over Snapchat, which deletes the video after it is viewed. Ohl told Wendt that Emswiler had stated: "It's not breaking and entering if you don't break anything." Wendt, allegedly believing that the Entry was illegal, reported it to the Iowa Ombudsman's Office.

**Charges Against Wendt**. On December 8, 2015, Wendt was cited by the Iowa Department of Natural Resources (DNR) with several infractions, the most serious being an aggravated misdemeanor charge of intentionally discharging a firearm in a reckless manner causing property damage in violation of Iowa Code § 724.30(3). Initially, Wendt was placed on paid administrative leave pending the outcome of the charges and pending an internal investigation conducted by Emswiler. Exhibit 32. However, after Emswiler reviewed the matter and determined that the charges were not baseless, Wendt was placed on *unpaid* administrative leave.

The City now maintains that the decision to place Wendt on unpaid leave was based on the fact that he was facing a weapons-related charge. However, the first email message concerning that decision did not mention this as the reason. In a message from Emswiler to then-Mayor Bonner, Emswiler stated that he could not "have [Wendt] arresting people on Simple and Serious Misdemeanors and throwing them in jail while he is under indictment for an aggravated misdemeanor." Exhibit 32. Similarly, Wendt contends he was told that he was placed on unpaid status because he was charged with an aggravated misdemeanor, not because the charge involved a firearm. However, Bonner testified that Wendt's unpaid status was due to the fact that he faced a firearms charge. Leinen testified that when he became Mayor, Bonner told him Wendt was on unpaid administrative leave because he had a firearms charge pending.

**The Directory**. In late 2015, one or more police department employees located the Directory on the police department's shared computer server. The Directory was

3

accessible by all police department employees and contained various images and photographs with text (memes), with some being of an offensive racial or sexual nature. A review of the Directory revealed that it was maintained by Emswiler. Indeed, it turns out that the Directory was stored on Emswiler's own work computer, accessible only to him, but had somehow been copied to the shared server as well. Once the Directory was discovered on the shared server, it was copied by someone who then provided at least some portions of it to Wendt while Wendt was on administrative leave.

On December 18, 2015, Emswiler directed an email message to all police department staff in which he stated that he knew his Directory had been accessed and copied. Emswiler further stated that he knew who had accessed the Directory but would give those employees an opportunity to "come clean." Further, Emswiler stated that if they did not come forward, it would show "who has morals and ethics and who probably needs to go elsewhere." He stated that if they came to see him no action would be taken, but failing to do so "would only hurt [their] career." Exhibit FF.

On January 5, 2016, Wendt contacted Bonner, who was acting as Mayor pro tem while Leinen was out of town, to report that he had information about images Emswiler stored on police department computer equipment. After Bonner asked to see the images at issue, Wendt provided Bonner's assistant with a USB drive containing a PowerPoint presentation that included approximately 50 images from the Directory. In response, Bonner asked Wendt to provide him with whatever additional information he had. Bonner was concerned that the Directory might contain confidential information regarding police department investigations. While Wendt told Bonner that he would attempt to obtain the rest of the Directory, he was unable to do so.

**Emswiler's Fate**. Emswiler ultimately admitted that the Directory was his and received a letter of reprimand from Leinen based on his use of police department computers to store inappropriate materials. Exhibit QQ. Wendt, however, believed

4

that Emswiler should be fired. After various communications with Bonner and the City Council did not achieve that result, Wendt went to the media. For example, on March 4, 2016, Wendt sent an email message to a reporter for the *Des Moines Register* in which he addressed issues relating to both the Entry and the Directory. Exhibit HH. Wendt's efforts resulted in media coverage of the Directory which, in turn, sparked public protests against Emswiler. *See, e.g.*, Exhibit 65.

In addition, Wendt was openly involved in a petition drive seeking Emswiler's removal from office. Among other things, Wendt displayed a copy of the petition at his place of business.[2] Ultimately, about 420 individuals signed the petition (Denison's population is approximately 8,000). Moreover, public disclosure of the Directory led to greater attendance at City Council meetings.

On March 23, 2016, Emswiler sent an email message to Leinen requesting copies of text messages and "the other document" exchanged between Wendt and Bonner "so we can go to the county attorney and pursue criminal charges." Exhibit 38. Leinen then emailed that information from his City account to his personal email account before forwarding it to Emswiler. Exhibit 39. Leinen provided the information to Emswiler about an hour after receiving Emswiler's request.

On March 25, 2016, the Iowa Department of Public Safety, Division of Criminal Investigation (DCI) determined there was no basis for pressing charges against Emswiler based on the Entry. Exhibit 47. Emswiler was not placed on suspension during the DCI investigation. Leinen testified that Emswiler was not suspended because the City believed the investigation would reveal that his Entry was lawful.

The City Council conducted an evaluation of Emswiler's job performance during a closed session on May 3, 2016. Emswiler received overall ratings of average or above

---

[2] Wendt operates a business in Denison called BW Outfitters.

average from each Council member. Exhibit 22. In June 2016, however, multiple members of the Council advised Leinen that they no longer had confidence in Emswiler and asked Leinen to tell Emswiler that he could resign or would be fired. Leinen testified that this development arose from Emswiler's practice of responding to public criticism via social media despite being directed not to. On June 23, 2016, Emswiler submitted his letter of resignation. Exhibit 23. Emswiler testified that his resignation was tendered at Leinen's request and that he understood he would be fired if he did not resign.

**Dismissal of the Charges Against Wendt**. On September 12, 2016, the charge against Wendt for reckless use of a weapon was amended from an aggravated misdemeanor to a simple misdemeanor. Shortly thereafter, Wendt contacted Rod Bradley, who was serving as the City's interim Director of Public Safety, to inform him that the charge had been reduced. Wendt advised Bradley that he had been told his unpaid leave status was due to the aggravated nature of the initial charge and requested information about his employment status as soon as possible. Exhibit 29. Bradley responded by telling Wendt he would confer with other City officials and get back to him. Two days later, Bradley informed Wendt that the City had decided not to change his employment status. Exhibit 30. Bradley stated that Wendt was on unpaid leave because he faced a weapons charge, not because the charge had been an aggravated misdemeanor.

On October 14, 2016, Wendt requested permission for secondary employment, per City policy, when he was offered a part-time position with the Adair Police Department. The City denied this request and Wendt filed a grievance, which was also denied.

On November 22, 2016, the firearms charge against Wendt was dismissed, leaving only two simple misdemeanor charges for trial – neither of which involved a firearm. Wendt sent an email message to Dan Schaffer, the City's new Chief of Police, to advise

him of this development. Exhibit 41. Schaffer forwarded the message to Leinen and to the City Attorney. Wendt's job status was not changed.

Wendt's remaining charges were scheduled for trial on November 28, 2016. Leinen testified that the City had not devised any plan for addressing Wendt's employment status once the charges against him were resolved. On November 29, 2016, all of the remaining charges were dismissed. Based on this development, Wendt requested immediate reinstatement. However, he was not reinstated at that time. No reason was provided as to why his unpaid leave status was being maintained.

**Post-Dismissal Events**. On November 29, 2016, Lisa Koch, the City Clerk/City Manager, sent an email message to Leinen and the City Council stating that a special council meeting was needed "to discuss Brad Wendt's pending lawsuit."[3] Exhibit 51. The message did not make reference to any need to discuss Wendt's employment status, nor did it address the fact that all charges against Wendt had been dismissed. Koch sent another email message the next day stating that she "[j]ust wanted to let everyone know, in case you are hearing 'rumors,' all the charges from the DNR against Brad Wendt were dropped yesterday." Exhibit 52. Koch then wrote: "That is the reason for the closed session at Tuesday night's council meeting and the special meeting on Thursday next week [December 6, 2016]." *Id.* However, Leinen testified that the reason for the special meeting on December 6, 2016, was to discuss Wendt's lawsuit. Moreover, on December 5, 2016, Koch sent another email message to Leinen and the City Council in which she asked that they review the lawsuits filed by Ohl[4] and Wendt prior to the following day's closed session, and another closed session that would take place the

---

[3] As noted above, Wendt filed this action on November 7, 2016.

[4] Like Wendt, Ohl filed a lawsuit against the City on November 7, 2016. That action has been removed to this court.

7

following week, because those matters would be discussed. Exhibit 42.

On December 5, 2016, Schaffer sent Leinen a letter concerning both (1) a Facebook post created by Wendt and (2) a complaint by two Denison residents, Tim and Brandon Johnston, that Wendt had harassed them. Exhibit 6. Schaffer explained that he had received the information about the Facebook post from an anonymous individual who dropped off a USB drive at the police department on December 5, 2016. Schaffer also stated that that he received the complaint about alleged harassment on December 4, 2016. Exhibit 6. Schaffer recommended keeping Wendt on unpaid administrative leave pending investigation into both matters. *Id.* On December 6, 2016, Shaffer requested that the DCI investigate the Johnstons' harassment complaint.

The City discussed the lawsuits filed by Wendt and Ohl in a closed session on December 6, 2016. Leinen testified that the City kept Wendt on unpaid administrative leave pending the investigations of Wendt's Facebook posts and the alleged harassment because he was already on that status and the City wanted to wait for the results of the DCI investigation before making any decisions. Ultimately, the DCI issued a report in which it concluded that there was not sufficient evidence to support criminal charges against Wendt arising from the Johnstons' harassment complaint. Exhibit 60.

**Wendt's Fate**. On February 14, 2017, the City issued an Order of Removal terminating Wendt's employment as a police officer. Exhibit B. The Order made reference to both (a) Wendt's Facebook posts, including one in which he criticized the DNR officer who had initiated the criminal charges against him, and (b) the Johnstons' harassment complaint. The Order stated that Wendt's conduct was in violation of "numerous rules of the Denison Police Department" and itemized those rules. *Id*.

## IV.   ANALYSIS

Wendt seeks entry of "a preliminary injunction requiring Defendant City of Denison to immediately restore Plaintiff Bradley Wendt to active status with the Denison Police Department, and enjoining and restraining Defendants from terminating Plaintiff's employment, placing Plaintiff on unpaid administrative leave, or otherwise interfering with his ability to work as a Denison Police Officer, without the advance approval of this Court."   Doc. No. 19 at 4.

### A.   *Preliminary Injunction Standards*

The Eighth Circuit Court of Appeals has stated:

> When evaluating whether to issue a preliminary injunction, a district court should consider four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest.

*Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)).   In this circuit, these are often referred to as the *"Dataphase"* factors.   In applying these factors, the court must keep in mind that a preliminary injunction is "an extraordinary remedy never awarded as of right."   *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).   As such, the party seeking injunctive relief bears the burden of proving that it is appropriate.   *Roudachevski*, 648 F.3d at 705.

### B.   *Application of the Dataphase Factors*

#### 1.   *Success on the Merits*

For the reasons set forth in the following section, I find that Wendt's request for a preliminary injunction turns on the issue of irreparable harm.   Thus, I will not address

9

the probability of success on the merits in detail. In short, based on the evidence summarized above I cannot say that Wendt has failed to demonstrate a probability of success. This is particularly true with regard to his First Amendment retaliation claim as it relates to his disclosure of the Directory. I find that this *Dataphase* factor weighs in favor of injunctive relief.

## 2. *Irreparable Harm*

A party seeking a preliminary injunction must establish that he or she will suffer irreparable harm absent such relief. *See, e.g.*, *Dataphase*, 640 F.2d at 114. "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citing *Adam–Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996); *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987)); *see also Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir. 1991) (irreparable harm is "threshold inquiry" in granting or denying preliminary injunction). "In order to demonstrate such harm, the moving party must show 'that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Zhou v. International Business Machines Corporation*, No. 15-CV-1027-LRR, 2015 WL 7756152, at *3 (N.D. Iowa 2015) (citing *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) (internal quotation marks omitted) (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)). When there is an adequate remedy at law, a preliminary injunction is not appropriate. *Watkins*, 346 F.3d at 844 (citing *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 738 (8th Cir. 1989)).

The City argues that Wendt can be fully compensated by a monetary judgment and therefore cannot establish irreparable harm. Wendt argues that because he is likely to

succeed on the merits of his constitutional retaliation claim, he has established irreparable harm. I find that even if Wendt establishes a likelihood of success on the merits, he has failed to establish that irreparable harm will occur if he is not immediately reinstated as a Denison Police Officer.

### a. The Whistleblower Claim

With regard to Wendt's claims under Iowa's Whistleblower Act, he can be fully compensated for any injuries with monetary damages. Federal law is very clear on this issue – lost earnings do not constitute irreparable harm. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90-92 (1974); *Sharp v. Parents in Community Action, Inc.*, 172 F.3d 1034, 1040 (8th Cir. 1999); *Roberts v. Van Buren Pub. Schs.*, 731 F.2d 523, 526 (8th Cir. 1984). As such, I find that Wendt has failed to demonstrate irreparable harm with regard to his Whistleblower Act claims.

### b. The First Amendment Claims

Wendt argues that his First Amendment claims are different. He notes that federal courts have recognized that irreparable harm is presumed with regard to First Amendment violations, as "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). While this theory of automatic irreparable harm in First Amendment cases has some superficial appeal, it does not stand up to scrutiny under the circumstances present here.

"To succeed in demonstrating a threat of irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *S.J.W. ex rel. Wilson v. Lee's Summit R–7 Sch. Dist.*, 696 F.3d

771, 778 (8th Cir. 2012) (quotation marks and citations omitted)). Moreover, "[t]he irreparable harm factor weighs against issuing a preliminary injunction when a harm has already occurred and can be remedied through damages." *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009). Applying these principles, the Southern District of Iowa recently found proof of irreparable harm lacking in a First Amendment case involving the alleged censorship of a student newspaper. *See Gomez v. Allbee*, 134 F. Supp. 3d 1159, 1180-81 (S.D. Iowa 2015). Among other things, the court noted the lack of evidence concerning a threat of *future* harm in the absence of injunctive relief. *Id.*

I find the analysis set forth in *Gomez* to be persuasive and, as applied to the record here, fatal to Wendt's request for a preliminary injunction. The evidence does not suggest that the City either (a) interfered with his past efforts to exercise his First Amendment rights or, more importantly, (b) is threatening to restrain his future efforts to exercise those rights. With regard to the past, Wendt exercised his free speech rights prodigiously, making his views about Emswiler and the Directory known to seemingly anyone who would listen – both within the City government and to the public and the press. Indeed, Wendt even openly supported a petition drive to remove Emswiler as Chief of Police while still a member of the police force. There is simply no evidence that the City restrained, or attempted to restrain, Wendt's exercise of First Amendment rights. Instead, Wendt claims that the City punished him in various ways, after the fact, for exercising those rights.

As for the future, Wendt has identified no specific First Amendment activity with which the City is actively interfering on an ongoing basis. At best, he testified that now he has experienced the City's alleged retaliation, he might think twice before engaging in similar First Amendment conduct in the future. However, he identified no specific free speech activities in which he would like to engage but is being prevented by the City

from doing so. "A mere 'theoretical possibility' of future harm is not sufficient to warrant injunctive relief; Plaintiff must show it is a 'demonstrated probability.'" *Gomez v. Allbee*, 134 F. Supp. 3d 1159, 1181 (S.D. Iowa 2015) (quoting *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1211 (8th Cir. 1992) (citations omitted); *S.J.W.*, 696 F.3d at 778; *CDI Energy Servs.*, 567 F.3d at 403)). The record here reflects no such "demonstrated probability."

Cases in which irreparable harm has been presumed with regard to First Amendment violations involve the ongoing restraint of free speech activities. *See, e.g.*, *Elrod*, 427 U.S. at 373 (injunctive relief affirmed due to ongoing threat that county employees would be discharged if they failed to provide support for the Democratic Party); *Child Evangelism Fellowship of Minnesota v. Minneapolis Special School Dist. No. 1*, 690 F.3d 996, (8th Cir. 2012) (granting injunctive relief to prevent the ongoing, viewpoint-based exclusion of an organization from an after-school program); *Marcus v. Iowa Public Television*, 97 F.3d 1137, 1140-41 (8th Cir. 1996) (irreparable harm established with regard to the exclusion of two political candidates from upcoming television forums).

I had occasion to address the presumption of irreparable harm in *Xcentric Ventures, L.L.C. v. Smith*, No. C15-4008-MWB, 2015 WL 4940812 (N.D. Iowa Aug. 19, 2015).[5] In that case, a website hosting company and its owner claimed that an elected county attorney was engaged in ongoing First Amendment retaliation by issuing subpoenas, disclosing confidential information and threatening criminal charges in response to criticism of the county attorney that was being posted on the website. After conducting an evidentiary hearing, I found that the plaintiffs had established a likelihood

---

[5] My analysis in *Xcentric* was in the form of a Report and Recommendation issued while I was a United States Magistrate Judge. The District Judge accepted the Report and Recommendation without modification. *See Xcentric Ventures, L.L.C. v. Smith*, No. C15-4008-MWB, 2015 WL 5184114 (N.D. Iowa Sept. 4, 2015).

of success on the merits of their First Amendment retaliation claim. *Id*. at \*20. With regard to irreparable harm, I wrote:

> A party seeking a preliminary injunction typically must establish that it will suffer irreparable harm absent such relief. *See, e.g., Dataphase*, 640 F.2d at 114. However, such harm is presumed with regard to First Amendment violations, as "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). Even without this presumption, I find that irreparable harm would continue to occur if Smith is not enjoined from continuing with his seemingly-retaliatory conduct. In particular, the continued receipt, review and disclosure by Smith of privileged communications and confidential financial information would likely cause harm that could not be cured or remedied by a mere award of money damages. Based on the legal presumption of irreparable harm and the evidentiary record, I find that this factor weighs in favor of injunctive relief.

*Id*. at \*21. Thus, *Xcentric* presented a situation in which both (a) the plaintiffs were engaged in ongoing First Amendment conduct and (b) the defendant was engaged in ongoing adverse conduct of a "seemingly-retaliatory" nature. I found that injunctive relief was appropriate to prevent further injury to the plaintiffs' First Amendment rights pending trial.

Wendt's situation is different. He complains of past adverse action that was allegedly motivated by past free speech activities. If he prevails, his damages will arise from the loss of his employment and, perhaps, other economic harm that resulted from past retaliatory conduct.[6] He has not shown that he faces the risk of future, irreparable

---

[6] Wendt alleges that his continued absence from the police department damages his reputation. Reputational damage can pose a threat of irreparable harm. *See Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 707 (8th Cir. 2011) (citing *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003)). However, Wendt did not present evidence supporting a finding that he is likely to suffer irreparable damage to his reputation absent injunctive relief.

harm absent the injunctive relief he requests. As such, his request for a preliminary injunction must be denied. *See, e.g.*, *Watkins*, 346 F.3d at 844.

### c. *Remaining Dataphase factors*

Because Wendt did not meet his burden of demonstrating irreparable harm, I need not address the remaining *Dataphase* factors in detail. For the record, I find that based on the record before me, (1) forcing the City to reinstate Wendt as a police officer would not be in the public interest and (2) the balance of the respective harms is roughly equal.

## V. CONCLUSION

For the reasons set forth herein, plaintiff Bradley Wendt's motion (Doc. No. 19) for preliminary injunction is **denied.**

**IT IS SO ORDERED.**

**DATED** this 8th day of June, 2017.

_____
Leonard T. Strand, Chief Judge