# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BRADLEY WENDT,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF DENISON, IOWA,<br><br>    Defendant.<br>_____<br>RAY OHL,<br><br>    Plaintiff,<br>vs.<br><br>CITY OF DENISON, IOWA,<br><br>    Defendant. | No. 16-CV-4130-LTS<br><br>No. 16-CV-4131-LTS<br><br>**ORDER REGARDING MOTIONS TO QUASH DISCOVERY AND FOR A PROTECTIVE ORDER** |

_____

## *I.    INTRODUCTION*

This matter is before the Court pursuant to a Motion to Quash/Objection to Subpoenas filed by third party Derrick Franck (Franck) (Doc. 68) and defendant City of Denison's (City), Motion for a Protective Order (Doc. 70).[1] Both motions seek to bar plaintiffs from deposing Franck, who served as an attorney for the City. Plaintiffs resist

---

[1] References to the docket in this order are to pleadings in Wendt v. City of Denison, 16-CV-4130-LTS. The parties have filed identical pleadings in the companion case of Ohl v. City of Denison, 16-CV-4131-LTS.

the motions, arguing that the City has explicitly and implicitly waived the attorney-client privilege. For the reasons that follow, the Court **grants** both motions.

## II. BACKGROUND

Plaintiffs were both police officers employed by the City. The City terminated the employment of both plaintiffs. Each has claimed wrongful termination. Specifically, plaintiff Bradley Wendt's petition alleges retaliation for Whistleblowing Violation of Iowa Code § 70A.29 (Count I), and retaliatory discharge violating his First Amendment rights, brought pursuant to Title 42, United States Code, Section 1983 (Count II). Plaintiff Ray Ohl's petition raised the same first two claims (Counts I and II) and added an abuse of process claim (Count III). Both officers claim the City fired them after each officer reported or were believed to have reported that former Chief Emswiler allegedly committed an illegal search and allegedly engaged in other misconduct. The City alleges that it fired both plaintiffs for cause and unrelated to the issues surrounding former Chief Emswiler. The City removed both cases to federal court, based on federal question jurisdiction. Although the City has alleged that it consulted the City Attorney for legal advice prior to firing the officers, the City has not defended itself based on having acted on the advice of counsel.

Ohl was a police officer for the City from September 4, 2013, until his discharge on February 5, 2016. Wendt was a police officer for the City from December 28, 2008, until his discharge on February 14, 2017. Brad Bonner was the City's Mayor from January 2014 until December 2015, and continued to serve on the City Council after his term as Mayor ended. Dan Leinen succeeded Bonner as Mayor effective January 1, 2016. John Emswiler served as Chief of Police from April 2015 until he resigned on June 23, 2016. He was replaced by Dan Schaffer. At all times relevant to this litigation, Derrick Franck served as City Attorney for the City.

During discovery in this case, plaintiffs deposed Mayor Dan Leinen. Mayor Leinen indicated that in making the employment decisions regarding plaintiffs, he obtained and relied upon advice from City Attorney Franck. (Doc. 70-3, at 14-15). Regarding the decision whether Wendt "was going to come back [from leave] after the charges were dropped," Mayor Leinen testified that he

> didn't make that decision. That decision was made by an attorney saying anything—as far as his coming back, any change in the status of his work needed to go through an attorney. I did not make that decision. That decision, as far as I was concerned, was made for me [by the City Attorney].

(Doc. 70-3, at 23). Mayor Leinen testified that he relied upon instructions from the City Attorney about what decision-making authority he had, but that it was ultimately his decision to make, based on the recommendation of the Chief of Police and the advice of the City Attorney. (*Id.*, at 14, 22, 23; 70-4, at 2). Mayor Leinen similarly testified at the preliminary injunction hearing in this case that he obtained the advice of the City Attorney in making employment decisions concerning plaintiffs. (Doc. 52-1, at 12, 17, 28).

Former Chief Emswiler testified in a deposition that the City Attorney assisted him "with figuring out details or the justification for firing" Ohl. (Doc. 73-1, at 6).[2] Plaintiffs also deposed Chief Schaffer, who testified that he "presumed" the mayor and City Attorney were involved in the decision to keep Wendt on unpaid leave and that the decision-making authority regarding plaintiffs' employment rested in the Mayor's hands. (Doc. 71, at 8). At the preliminary injunction hearing held in this case, Chief Schaffer testified that he understood that he may be part of the conversation regarding employment

---

[2] Plaintiffs cite to depositions taken in this case, including that of former Chief Emswiler, but did not attach the depositions or excerpts as exhibits to their briefs. Therefore, the Court can only rely upon the representations made by plaintiffs in their brief as to the content of those depositions.

decisions, but that "the decision would have to come through the mayor and the city attorney." (Doc. 52-1, at 34). Because there was pending litigation, Chief Schaffer testified that he "was advised that any issues regarding Mr. Wendt's employment status should be vetted through counsel for the City . . . ." (*Id.*). Chief Schaffer further testified that when he became aware of a potential violation of department policy by Wendt, the City Attorney instructed him not to "do anything further" pending the outcome of charges against Wendt. (*Id.*, at 44). Former Mayor Brad Bonner testified at the preliminary injunction hearing that he was not involved in the decision to fire Wendt because City Attorney Franck told him that he did not have the authority to do so as mayor pro tem. (*Id.*, at 186).

Asserting that the City waived the attorney-client privilege, plaintiffs served City Attorney Franck and his law firm with subpoenas, seeking to depose Franck and obtain documents reflecting, *inter alia*, "[a]ll communications with any employee or agent of the City of Denison regarding or related to Ray Ohl or Bradley Wendt before November 7, 2016 . . . ." (Doc. 70, at 3-8).

### III. STANDARD OF REVIEW

"Generally, a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense." *Wells v. Lamplight Farms Inc.*, 298 F.R.D. 428, 433 (N.D. Iowa 2014). The party who claims the benefit of the attorney-client privilege has the burden of establishing the right to invoke its protection. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978) (en banc).

"'The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law.'" *United States v. Yielding*, 657 F.3d 688, 706-07 (8th Cir. 2011) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The attorney-client privilege protects confidential communications between a client and the attorney made for the purpose of facilitating the rendition of legal services to the

4

client. *Id.* at 707. When a client communicates with an attorney, it is "prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary." *Diversified*, 572 F.2d at 610. "Generally, it is well established under common law that confidential communications between an attorney and a client are privileged and not subject to disclosure absent consent of the client." *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir. 1984). "Under federal common law,[3] the elements of the attorney-client privilege are: (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." *Sec. & Exch. Comm'n v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009) (footnote not in original).

---

[3] In their briefs, both parties and Franck cite to Iowa law regarding application of the attorney-client privilege. In a case in federal court based on diversity, the Court applies "federal law to resolve work product claims and state law to resolve attorney-client privilege claims." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000) (citing *Simon v. G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987)). *See also Union Cty., Iowa v. Piper Jaffray & Co., Inc.*, 525 F.3d 643, 646 (8th Cir. 2008) ("Because this is a diversity case, the determination of whether attorney-client privilege applies is governed by state law."). In this case, however, this Court has jurisdiction based on a federal question; therefore, federal law applies to resolve the attorney-client privilege claim here. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 915 (8th Cir. 1997); *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985). Federal Rule of Evidence 501 provides:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Federal law governs federal claims even if state law claims are asserted in the same action pursuant to the court's supplemental jurisdiction. *Mem. Hosp. for McHenry Cty. v. Shadur*, 664 F.2d 1058, 1061 n.3 (7th Cir. 1981). Nevertheless, "state law is still relevant and should be considered by federal courts when determining whether a state privilege should be recognized as a matter of federal law." *Ray v. Winslow House, Inc.*, No. C97–0226, 1999 WL 33655723, at *2 (N.D. Iowa Jan. 15, 1999).

Proposed Rule of Evidence 503 was never enacted by Congress, but the Eighth Circuit has said it provides "a useful starting place for an examination of the federal common law of attorney-client privilege." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 915 (citation and internal quotation marks omitted). Rule 503 provides, in pertinent part, as follows:

> **(a) Definitions.** As used in this rule:
> **(1)** A "client" is a person, public officer, or corporation, association, or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him [or her].
> **(2)** A "lawyer" is a person authorized, or reasonably believed by the client to be authorized, to practice law in any state or nation.
> **(3)** A "representative of the lawyer" is one employed to assist the lawyer in the rendition of professional legal services.
> **(4)** A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.
> **(b) General rule of privilege.** A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between [themself] or [their] representative and [their] lawyer or [their] lawyer's representative, or (2) between [their] lawyer and the lawyer's representative, or (3) by [themselves] or [their] lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client.
> **(c) Who may claim the privilege.** The privilege may be claimed by the client, . . .. The person who was the lawyer at the time of the communication may claim the privilege but only on behalf of the client. His [or her] authority to do so is presumed in the absence of evidence to the contrary.

Proposed FED. R. EVID. 503.

When the client is a municipality, the privilege belongs to the City, and not to any individual employee. *See, e.g.*, *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986) ("[A]ny privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer."); *see also United States v. Dose*, No. CR04-4082-MWB, 2005 WL 106493, at *16 (N.D. Iowa, Jan. 12, 2005) (holding that the attorney-client privilege belonged to the corporation and not to an individual officer of the corporation). The privilege covers communication by city employees who, within the scope of their duties, have conversations with the city attorney for purposes of obtaining legal advice are clearly "clients" within the meaning of the privilege. *Hollins*, 773 F.2d at 196-97. A city attorney can be an "attorney" within the meaning of the privilege. *Id.*

A client may waive the attorney-client privilege, and may do so either expressly or by implication. *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982); *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974). Waiver will be implied when a client has testified concerning portions of the attorney-client communication. *Sedco*, 683 F.2d at 1206. *See also Hollins*, 773 F.2d at 196 ("Waiver will be implied when a client has testified concerning portions of the attorney-client communication."); *Engineered Prods. Co. v. Donaldson Co., Inc.*, 313 F. Supp.2d 951, 1018-23 (N.D. Iowa 2004) (concluding party waived its attorney-client privilege as to some documents and testimony regarding communications with counsel, but the privilege remained partially intact where the scope of the waiver was limited). "The attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such waiver to all communications on the same subject matter." *PaineWebber Grp., Inc. v. Zinsmeyer Tr. P'ship*, 187 F.3d 988, 992 (8th Cir. 1999). The privilege may also be waived by asserting an advice of counsel defense. *See United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998) (holding that a party "cannot selectively assert the

7

privilege to block the introduction of information harmful to his case after introducing other aspects of his conversations with [his attorney] for his own benefit."). A party may similarly impliedly waive the attorney-client privilege by "plac[ing] in issue a communication which goes to the heart of the claim in controversy." *Union Cty., Iowa v. Piper Jaffray & Co., Inc.*, 248 F.R.D. 217, 220 (S.D. Iowa 2008).

## IV. DISCUSSION

Plaintiffs argue that there has been both an express and implied waiver of the attorney-client privilege. Other than the mere assertion that there has been an express waiver, however, plaintiffs fail to cite to any statement, document, or pleading by the City that acted as an express waiver of the attorney-client privilege that exists between itself (and its agents) and the City Attorney. Therefore, the Court finds that there has not been an express waiver of the privilege.

Citing a state case from Pennsylvania, plaintiffs also argue that "when an attorney is the decisionmaker, as opposed to legal counsel[ ] giving legal advice to the decisionmaker, the attorney-client privilege does not apply." (Doc. 73-1, at 11). Putting aside whether that is in fact the law, the Court finds that based on the record provided to the Court, City Attorney Franck was not the decision-maker regarding plaintiffs' firings. The record shows that the Mayor was the decision-maker and he consulted and obtained legal advice from the City Attorney. The City Attorney may have told the Mayor whether he had the authority to act and when the Mayor could or should legally allow an employee to return from leave, but there is nothing in the record to indicate that the City Attorney made the alleged adverse employment decisions. The portions of the transcript upon which plaintiffs rely are replete with speculation that the City Attorney was involved in making the decision, but not with fact.

Plaintiffs also argue that there has been an implied waiver of the privilege. Although plaintiffs' argument is not clear, it appears that plaintiffs are asserting that the

City has impliedly waived the privilege by asserting an advice of counsel defense and/or by disclosing the contents of the communication. To determine whether there has been an implied waiver, the Court must examine two elements: "(1) implied intention and (2) fairness and consistency." *Sedco*, 683 F.2d at 1206. A "waiver is to be predicated . . . when the conduct . . . places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege." *Id.* (citing 8 J. WIGMORE, EVIDENCE § 2388, at 855).

As noted, an implied waiver of the privilege may be effected by raising as a defense the party's reliance upon an attorney's advice. *Workman*, 138 F.3d at 1263. In this case, the City has not claimed an advice of counsel defense. An advice of counsel defense does not arise merely as a result of City employees stating that they consulted an attorney before making decisions. The City has not claimed that it was justified in taking adverse employment actions against plaintiffs because the City relied in good faith upon the advice of counsel. The City has not, as plaintiffs assert (Doc. 73-1, at 15), divulged favorable information and then asserted the privilege to bury detrimental facts. Moreover, Mayor Leinen discussed consulting with the City Attorney only in response to questioning by plaintiffs' counsel; Mayor Leinen did not assert advice from the City Attorney as a justification for his actions.

Plaintiffs allege that Mayor Leinen "repeatedly indicated he completely abdicated his authority to Mr. Franck, or at the very least relied solely upon Mr. Franck's recommendation." (*Id.*). The record does not, however, support this broad assertion. Mayor Leinen testified that he consulted the City Attorney and obtained advice from the City Attorney in making the decisions to fire the officers. It is to be expected that a decision-maker may consult an attorney regarding whether the decision-maker has the legal authority to terminate an employee or obtain advice on how best to terminate the employee. That does not make the attorney the decision-maker. To the extent that

9

plaintiffs believe the City will mention the consultation at trial and thus allow the jury to unfairly infer that the City is claiming advice of counsel as a defense, plaintiffs can address the issue by filing a motion in limine.

Plaintiffs also appear to assert that the City impliedly waived the attorney-client privilege by disclosing the contents of the City Attorney's communication to City employees. A waiver resulting from testimony about the substance of attorney-client communications is distinct from a waiver based on a reliance of counsel defense. *Sedco*, 683 F.2d at 1206. A party may impliedly waive the attorney-client privilege when the substance of the advice is specifically referred to or described. *Charles Woods Television Corp. v. Capital Cities/ABC, Inc.*, 869 F.2d 1155, 1162 (8th Cir. 1989). Having reviewed the transcripts from the deposition and the preliminary injunction hearing, the Court finds that no employee disclosed the content of the communication between the City Attorney and those employees. Rather, the employees only testified that they obtained advice from the City Attorney regarding who could make such decisions, and whether the decision-maker had the legal authority to make the decisions.

In short, the Court finds that the City has not expressly nor impliedly waived the attorney-client privilege. This is not a case where it would be unfair to plaintiffs' to bar them from discovering the nature of the advice given to Mayor Leinen by the City Attorney.

## V.     CONCLUSION

Therefore, for the reasons stated, the Court **grants** the Motion to Quash/Objection to Subpoenas filed by third party Derrick Franck (Franck) (Doc. 68) and defendant City of Denison's (City), Motion for a Protective Order (Doc. 70).

**IT IS SO ORDERED** this 29th day of March, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa